IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH BAKER, BARBARA BAKER,
CAMDEN BAKER, and A.B., a
Minor, by Parent BARBARA BAKER,

          Plaintiffs,

     v.

TIMOTHY M. GHIDOTTI, BORIS
JURKOVIC, RELIABLE RECOVERY
SERVICES, INC., JEAN M.
LINDGREN, JESUS VERA, STEVEN
MARTIN, JUAN M. CABRALES,
DENNIS P. WALSH, MICHAEL A.
FLORES, UNKNOWN OFFICERS OF THE
CHICAGO POLICE DEPARTMENT, and
THE CITY OF CHICAGO,

          Defendants.

Case No. 11 C 4197

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are three Cross-Motions for Summary Judgment. For the reasons stated herein, each Summary Judgment Motion is granted in part and denied in part. Also pending are various Motions to Strike, all of which are denied as moot.

## I.  BACKGROUND

This case arises out of attempts by Defendant Reliable Recovery Services, Inc. and its employee, Timothy Ghidotti (collectively, the "Recovery Defendants"), to repossess a Chevrolet Impala owned by Juanita Horton. Ms. Horton is the stepdaughter of Plaintiff Kenneth Baker ("Baker"). Around 4:30 a.m. on January 11,

2010, Ghidotti went to the Baker house looking for the Impala. When he knocked on the front door, the door came open and a security alarm went off. Ghidotti saw several officers of the Chicago Police Department ("CPD") down the street, so he got the officers to talk to Baker, who told them that there was a problem with the front door. Ghidotti spoke with a woman at the Baker home who told him that Juanita Horton did not live there but did stay there occasionally.

The next day, at 6:30 a.m., thirteen-year-old Plaintiff Ashley Baker ("Ashley") emerged from a shower and saw a white man peering in through the window of the Baker back door. Ashley heard this man go down the back outdoor stairs, close the gate to the yard, and come up the front stairs to the home. Ashley was so terrified that she ran into a closet to hide and could not stop herself from urinating all over herself and her clothes. For reasons that are not entirely clear, she then ran outside into the Chicago winter wearing nothing but her soiled pajamas. Ashley's older brother, Oliver Johnson, was driving to the Baker house to give Ashley a ride to school and saw her running down the street. Oliver helped the distraught Ashley back to the house, where they found a business card from a company with the name "Recovery" in it. Ghidotti does not remember whether he went to the Baker house that day, and stated that he never would have looked through the window of a back door.

Two weeks later, on January 27, the ADT alarm company contacted Baker to tell him that the alarm at the Baker home had been activated.  The police arrived and found the front door wide open, so they entered with guns drawn, which woke and frightened Plaintiffs Ashley and Camden Baker.

In the middle of the night on February 1, 2010, Ghidotti arrived at the Baker house looking for the Impala.  Even though the car was nowhere to be seen, Ghidotti rang the doorbell.  Baker answered the door and Ghidotti asked about Juanita and the Impala.  Baker told Ghidotti that Juanita did not live there.  Ashley Baker looked out the window and recognized Ghidotti as the man who had been peering through the back door on January 12.  Ghidotti testified that Baker disappeared for a moment and returned holding a gun, although the gun was barely visible.  Baker and his family all testified that Baker was not holding a gun, and police officers testified that Ghidotti later told them that he did not actually see a gun but just believed, based on Baker's demeanor, that Baker was holding one.  Either way, Baker shouted at Ghidotti to get off his porch, saying such things as "get the hell off my porch" and "don't come back on my property no more."  Apparently, Baker also said that if Ghidotti kept coming back looking for the car, he would "have something for him."  There is no suggestion that Baker pointed a gun at Ghidotti or made any threatening movements or gestures.

Ghidotti returned to his truck and called 911. He told the dispatcher that he had been threatened by a man with a gun. Defendants Jean Lindgren and Jesus Vera, both CPD officers, arrived at the scene. Lindgren and Vera spoke with Ghidotti, who told them that he thought Baker had been holding a handgun, although he caught only a glimpse of it and could not offer many specifics – in his deposition, Ghidotti could not decide whether he had seen part of the trigger or part of the barrel. Lindgren and Vera knocked on the front door to determine whether Baker knew anything about the missing vehicle. More officers arrived at the scene, including Sergeant Steven Martin. The officers asked Baker for identification, and he presented a Firearm Owner's Identification ("FOID") Card, although the parties dispute whether the card was valid or expired.

The parties agree that the police entered the home but dispute the circumstances that led them to do so. Sergeant Martin says that he asked Baker if he could step inside to get out of the cold, and Baker allowed him in. Lindgren and Vera were a few feet away and could not hear anything, but nonetheless did not hear Baker give them permission to enter. According to Baker, Martin and another officer came running up the front stairs, pushed Baker out of the way, opened the screen door and inner door, and barged into the Baker house uninvited. Plaintiffs testified that Sergeant Martin and Officers Lindgren and Vera corralled the Baker family

into one room and began scouring the house.  To prevent the police from tearing up his house any further, Baker informed Martin that he owned a gun and stored it in his bedroom, under his mattress. Martin retrieved a shotgun from the bedroom.

Martin then went outside to speak with Ghidotti.  It appears that at that point, Ghidotti denied that he had seen a shotgun and informed these officers that he did not actually see a gun, but believed based on Baker's demeanor and actions that Baker was holding a gun.  The CPD "incident report" from that night reflects that Ghidotti told the police that he did not actually see Baker holding a gun.  Sergeant Martin testified that he does not believe that as a police officer he is supposed to determine whether an alleged victim's story is credible, except in extreme situations.

Martin next engaged in some back and forth negotiations between Baker and Ghidotti.  When at the car, Martin asked Ghidotti whether he wanted to press charges, and Ghidotti said that he would decline to press charges if Baker told him where the car was. Martin returned to the house and relayed this proposition to Baker, but Baker either did not know or did not offer any information about the car.  Baker testified that Martin shuttled between him and Ghidotti four times.  At one point, Martin tried unsuccessfully to talk Ghidotti out of signing a complaint against Baker.  When Martin came back to the house after talking to Ghidotti for the

last time, Martin relayed to Baker that Ghidotti intended to sign a complaint.  Baker was then arrested for aggravated assault.

It is unclear exactly how much time elapsed, but it appears that the Defendant Officers were probably in the home for at least twenty minutes, if not longer.  Plaintiffs testified that they were detained in their living room during this time.

The police took Baker to the police station, where Lindgren and Vera inventoried the shotgun and were told by "someone at the gun desk" that the shotgun was not registered properly.  Lindgren testified that when they arrested Baker, they did not have any reason to think that the gun was not registered properly.  At the station, however, a charge of having an expired gun registration was added.  Baker attended nine court hearings in two different courts before the charges of aggravated assault and possession of a firearm with an expired registration were dismissed.

Plaintiffs have submitted evidence of the distress they suffered in the wake of these events.  Baker works two jobs that require security clearance:  one for the City of Chicago in the Aviation Department (one of his responsibilities is meeting Air Force One to let the president on and off the plane) and another with J.B. Hunt Transportation where he helps transport poison gas, explosives, and other hazardous or dangerous materials.  Baker's arrest was picked up promptly by Homeland Security, and the arrest and prosecution threatened his security clearance and credentials.

Baker feared for his jobs and his safety.  Baker also worried about the toll that these events took on his daughter, Ashley.  Baker has suffered from crying fits and lost sleep.

As to the other Plaintiffs, Barbara Baker testified that she is upset and angry and stays up all night because she cannot sleep. She lost her job because she fell asleep at the wheel of a company van.  Ashley Baker was distraught at the series of events in this case:  the incident with someone who may have been Ghidotti peering through a window after her shower, the police waking her up at gunpoint, the police searching her house, and her father's arrest. In addition to the trauma described above, she suffered bed-wetting, fear of being alone (which led her to sleep on the floor of her parents' bedroom for four months), anger at authority, failing grades, and fights and suspensions at school.  Camden Baker, like his sister, was upset that he was woken up and gunpoint and had to watch the police search his house.  He had trouble sleeping and, when he did sleep, he suffered from nightmares.  He was so afraid of the police returning to the house that he moved out and visits only rarely.

## II.  MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). The Court construes all facts and draws all reasonable inferences

in favor of the non-moving party. *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009).

## A.  Defendants Cabrales and Flores

Defendant Officers Cabrales and Flores move for summary judgment on the ground that they were neither at the scene nor involved in the incident.  By this, they mean that they were in their police vehicle on the street near the Baker house but never left the vehicle and did not interact with Plaintiffs.  Plaintiffs oppose this Motion and note that multiple witnesses, including Ghidotti and Plaintiffs, testified that somewhere between six and nine officers entered and searched the home.  Plaintiffs offer no identifying characteristics for those other officers whom they saw enter the house.  They hope to prove circumstantially that Cabrales and Flores – who concede that they were in their police car parked at the curb – were some of the other officers who entered the house.  This argument relies entirely on speculation, and "[i]nferences that are supported only by speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004); *Billups v. Kinsella,* No. 08 CV 3365, 2010 WL 5110121 (N.D. Ill. Dec. 9, 2010) (speculative evidence linking police officer to the alleged violation "is not enough to allow the claim to proceed to trial"). Summary judgment is granted in favor of Defendants Cabrales and Flores on all counts for which they are named.

## B.  Search

Defendants Lindgren, Vera, Martin, and Walsh (the "Defendant Officers") argue that they are entitled to summary judgment on the Fourth Amendment search claim because Baker consented to the search.  However, it is quite clear that the parties dispute the circumstances of the police entry to the house and the subsequent search of the bedroom, where Martin found the shotgun.  Both Baker and Camden testified that Martin and one of the police officers ran up the front stairs, pushed Baker out of the way, and barged into the house.  ECF No. 105-5 at 70:15-18.  Plaintiffs testified that Defendants began searching the house, and Baker told them where his gun was hidden only because he did not want them to tear up his entire house.  *Id.* at 73:15-20.  Consent is an exception to both the warrant requirement and the probable cause requirement, but consent must be given voluntarily.  *See, Bumper v. North Carolina,* 391 U.S. 543, 548 (1968).  Genuine factual disputes preclude the Court from concluding whether the entry of the home and the search for the gun were reasonable based on valid consent.

Plaintiffs move for summary judgment on the ground that even if the entry was consensual, the scope and duration of the police occupation of the home made the search unreasonable.  But it is difficult to evaluate this argument without knowing the circumstances under which the Defendants entered the house.  As discussed above, Martin testified that Baker invited him in, but

Baker testified that Martin and another officer barged in uninvited. Martin testified that none of the officers searched the house except for when Baker told Martin where the gun could be found. Plaintiffs all testified that the officers were rummaging through the entire house. Thus, it is unclear how long the police were in the house, what took place during that time, and whether Baker allowed the police into the house in the first place. A twenty-minute stay could have been reasonable, depending on the circumstances. With critical facts disputed, the Court cannot grant summary judgment for either party on the Fourth Amendment search claim.

### C. False Arrest

The parties have filed cross-motions for summary judgment on the false arrest claim, asking the Court to determine whether the arrest was supported by probable cause. "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon County, Ill.,* 705 F.3d 706, 714 (7th Cir. 2013). Probable cause does not require evidence sufficient to sustain a conviction or to demonstrate that it is more likely than not that the suspect committed a crime. *United States v. Sawyer,* 224 F.3d 675, 679 (7th Cir. 2000). Probable cause exists where the totality

of the circumstances reveals a substantial chance that the suspect was engaged in criminal activity. *Id.*

In this case, the underlying crime was aggravated assault, and Defendants do not argue that they had probable cause to arrest Baker for any other crimes. In Illinois, an individual commits assault when he "knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 Ill. Comp. Stat. 5/12-1(a). Assault involves either a threatening gesture or an otherwise innocent gesture made threatening by accompanying words, such that it creates a reasonable apprehension of an imminent battery. *Kijonka v. Seitzinger,* 363 F.3d 645, 647 (7th Cir. 2004).

Here, the proffered basis for probable cause was that Baker threatened Ghidotti with a gun and then Ghidotti felt threatened. Of course, it is not enough that the victim feel threatened, as that feeling "must have a measure of objective reasonableness." *People v. Floyd,* 663 N.E.2d 74, 76 (Ill. App. Ct. 1996). And it is not enough to say that Baker threatened Ghidotti, because that argument assumes the conclusion: that there was a threat. Rather, the Court must consider "the words employed by the person charged with assault." *Id.* Here, Baker said such things as "get the hell off my porch" and "don't come back on my property no more." Baker also apparently said that if Ghidotti kept coming back looking for the car, he would "have something for him." Even if these words

are taken to mean that Baker would shoot Ghidotti if Ghidotti ever returned, these words do not add up to a threat because they speak to only indefinite action at some indefinite point in the future. *Kijonka,* 363 F.3d at 647 (explaining that verbal threats of "indefinite action in the indefinite future" fail to meet the imminence requirement in the assault statute).

The requisite threatening gesture is similarly missing. The Defendant Officers admit that Ghidotti told them that he did not actually see a weapon; instead, Ghidotti *thought* that Baker was holding a weapon because of Baker's demeanor and actions. This admission came after Ghidotti had told the 911 dispatcher that he had seen a gun. In addition, Ghidotti told the officers that he had seen a handgun, but the police recovered a shotgun. These circumstances – a victim with a changing story and physical evidence that does not match the story – should have alerted the officers to the possibility that Ghidotti might not be credible. Officers Lindgren and Vera indicated in their narrative in the police case incident report that Ghidotti told them that he did not actually see a gun; later, the officers testified that this incident report was accurate. There is no evidence that Baker made any other threatening gestures, such as raising his fist, pointing a gun, or moving to grab a weapon. Subject to limited exceptions not relevant here, some action or gesture is required before threatening words can amount to an assault. *People v. Floyd,* 663

N.E.2d 74, 76 (Ill. App. Ct. 1996) (explaining that "words alone are not usually enough to constitute an assault").

There can be no genuine dispute that Baker's statements to Ghidotti were not threatening enough to give Ghidotti a reasonable fear of an imminent battery. Moreover, even assuming that Baker held a gun at his side, it appears that Baker did his best to hide that gun from Ghidotti, who caught only a glimpse of it. And there is no indication from the record that Baker made any threatening gesture. This conduct does not amount to an assault under Illinois law.

The Defendant Officers knew all of this yet nonetheless arrested Baker for aggravated assault. Defendants repeat *ad nauseum* that they "reasonably relied on information provided to them by Ghidotti," ECF No. 125 at 8, and arrested Baker based on the "threat" that Ghidotti described. Even if police need not establish every element of an offense, they will have probable cause to arrest only if the facts known to the officers at the time would have led to a reasonable belief that the suspect had committed a crime. The police cannot simply rely on a victim who reports that he was "threatened" or feared for his safety; before police officers conclude that they have probable cause to arrest a suspect, they must determine whether the words and conduct amounted to an assault and that the victim's fear was reasonable. Conclusory assertions that Baker threatened Ghidotti are

insufficient.  Defendants do not even attempt to argue that the Baker's words amounted to a threat or that there was any threatening gesture – they merely assert that there was a threat.

On this record, there can be no genuine dispute that the arresting officers should have known at the time that no assault had been committed.  Thus, the Defendant Officers lacked probable cause to arrest Kenneth Baker.  *United States v. McDonald,* 453 F.3d 958, 962 (7th Cir. 2006) ("A stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable.").  The Court grants summary judgment in favor of Plaintiff Kenneth Baker on the false arrest claim, Count VIII.

### D.  Failure to Investigate

Plaintiffs' Count IX is brought against the Defendant Officers for failure to investigate.  The parties have filed cross-motions for summary judgment on this issue.

When it is unclear whether a crime has been committed, a police officer may not arrest a suspect without first pursuing "[r]easonable avenues of investigation" to determine whether a crime has actually taken place.  *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.").  But Plaintiffs have not cited, and the Court could not find, any authority for the idea that a police officer's failure to

investigate can constitute a distinct constitutional violation, apart from the false arrest claim. Plaintiffs' failure to investigate claim is not cognizable, and therefore it is dismissed.

## E.  Failure to Intervene

The Defendant Officers have moved for summary judgment on Count X for failure to intervene. The only support that Defendants offer is their contention that there was no underlying constitutional violation. But as discussed above, the Court grants summary judgment in favor of Plaintiff Kenneth Baker on one of his constitutional claims. Thus, Defendants' Motion for Summary Judgment is denied as to this Count as well.

## F.  Conspiracy

Count XIII, brought against Ghidotti and the Defendant Officers, is a conspiracy claim brought pursuant to 42 U.S.C. § 1983. The conspiracy claim is brought by all four Defendants to remedy four alleged constitutional violations: the entry into the Baker home, the search of the Baker home, the detention of Plaintiffs while the police negotiated with Baker, and the custodial arrest of Baker.

### 1.  *Ghidotti*

A private citizen can be held liable under § 1983 only if his conduct is attributable to the state. *See, West v. Atkins,* 487 U.S. 42, 49 (1988). One way for a plaintiff to forge the requisite connection between the private conduct and the state is to prove

that the private defendant was "a willful participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27 (1980). "To establish § 1983 liability through a conspiracy, a plaintiff must establish that (1) a state official and private individual(s) reached an understanding to deprive plaintiff of his constitutional rights; and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Logan v. Wilkins,* 644 F.3d 577, 583 (7th Cir. 2011).

Ghidotti argues that there is no evidence of a conspiracy or joint action. Ghidotti notes correctly that the fact that he called the police to report a crime – even if he lacked grounds to do so – does not make him a co-conspirator with agents of the state. *See, Gramenos v. Jewel Cos.,* 797 F.2d 432, 435 (7th Cir. 1986). But Ghidotti appears to have done more than report a crime; facts in the record suggest that Ghidotti sought police assistance with a purely private matter, recovering the car. It appears that the officers conducted a coordinated effort to coerce Baker to reveal information about the missing car. Ghidotti took the position that he would sign a criminal complaint against Baker unless Baker gave him the car or told him where it was. The police told Baker that if he gave Ghidotti the car, or told him where it was, they would not arrest him.

Although it does not appear that the Seventh Circuit has addressed this issue, district courts applying the law of this

circuit and other circuit courts have held that state action can be found where a police officer takes an active role in repossessing property. *Niemeyer v. Williams,* 910 F.Supp.2d 1116, 1127 (C.D. Ill. 2012); *Barrett v. Harwood,* 189 F.3d 297, 302 (2d Cir. 1999). The Sixth Circuit has explained that "[a] police officer's arrival and close association with the creditor during the repossession may signal to the debtor that the weight of the state is behind the repossession and that the debtor should not interfere by objecting." *Hensley v. Gassman,* 693 F.3d 681, 690 (6th Cir. 2012). Here, disputed facts viewed in the light most favorable to Plaintiff show that the police, after conferring with Ghidotti, took an active role in the repossession by relaying messages from Ghidotti to Baker and trying to find out more information about the car. Based on testimony from a variety of deponents, it appears that the police were trying to convince Baker to reveal information about the location of the car – that is, the police were helping Ghidotti do his job. These facts are evidence of a conspiracy and thus summary judgment is not warranted.

## 2. Defendant Officers

The Defendant Officers have moved for summary judgment on the conspiracy claim on the ground that Plaintiffs have failed to point to evidence showing a genuine issue of material fact regarding the existence of a conspiracy. As discussed above, there is ample evidence that, based on discussions with Ghidotti, the Defendant

Officers agreed to help find out information about the car. Sergeant Martin negotiated with Baker and Ghidotti, and told Baker that he would put the gun back under the mattress and not arrest Baker if Baker would reveal where Juanita Horton lived and where her vehicle could be found. Apparently, Martin took four round trips between the house, where he spoke with Baker, and the curb, where he spoke with Ghidotti. Sergeant Martin threatened to arrest Baker if Baker did not reveal where the car was, and that arrest would have been unlawful if not supported by probable cause. Martin's participation in a cooperative effort to recover the car and coerce information from Baker is evidence of a conspiracy. *Richardson v. City of Indianapolis,* 658 F.2d 494, 500 (7th Cir. 1981) (explaining that a conspiracy involves "[a] combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means"). As to the conspiracy count against the Defendant Officers, the Motion for Summary Judgment is denied.

### G.  Malicious Prosecution

Counts XV and XVI are brought against all Defendants for malicious prosecution of the aggravated assault and weapons registration charges, respectively. Both sets of Defendants have moved for summary judgment.

### 1. Defendant Officers

The Defendant Officers argue that they are entitled to summary judgment on Count XV because they had probable cause to arrest Baker for aggravated assault. But as discussed above, the Defendant Officers lacked probable cause for the arrest.

Defendants argue that they had probable cause to arrest Baker for failing to register his firearm, the basis of Count XVI. They support that argument with the unsworn statement of Sergeant Schaff – but unsworn statements are not appropriate evidence on summary judgment. FED. R. CIV. P. 56(c)(1)(A) (requiring affidavits or declarations). Defendants contend that someone at the "gun desk" told them that Baker's gun was not registered – but that statement, offered to prove the truth of the matter asserted, is inadmissible hearsay. *Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009) (explaining that a party may not rely upon inadmissible hearsay at summary judgment). If Defendants want to prove that they had probable cause for this arrest, they must offer competent evidence to support the charge. As to both malicious prosecution claims, the Motion for Summary Judgment brought by the Defendant Officers is denied.

### 2. Recovery Defendants

The Recovery Defendants have moved for summary judgment on Count XV for malicious prosecution. They note correctly that a plaintiff prevails on a malicious prosecution claim by proving five

elements: (1) the institution and prosecution of judicial proceedings by the defendant, (2) a lack of probable cause for those proceedings, (3) malice in instituting the proceedings, (4) termination of the prior cause in the plaintiff's favor, and (5) suffering by the plaintiff of damage or injury from the prior proceeding. *Reed v. Doctor's Associates, Inc.,* 824 N.E.2d 1198, 1205 (Ill. App. Ct. 2005). Defendants concede the first element but contest the rest.

As to probable cause, Defendants insist that "the record is clear that in Ghidotti's mind, he believed that Mr. Baker threatened him with a gun." ECF No. 114 at 17. That contention distorts the inquiry – the question is whether any apprehension was reasonable – and ignores testimony from the police that Ghidotti admitted that he did not actually see a gun. Even after Plaintiffs used their opposition papers to call attention to the factual dispute, Defendants' reply brief simply repeats their highly questionable claim that Ghidotti's testimony is uncontroverted. ECF No. 171 at 12. It seems appropriate to remind counsel for Defendants of their duty of candor before the Court.

On the third and fifth elements, Defendants provide no argument or evidence to support granting summary judgment. It is true enough that a party may move for summary judgment on the ground that "an adverse party cannot produce admissible evidence to support" a fact necessary for the adverse party's case. FED. R.

CIV. P. 56(c)(1)(B).  However, the movant still bears the initial burden of showing, not merely asserting, "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Defendants' argument on this Count fails to discuss two of the elements and, as discussed above, ignores pertinent factual disputes.  Defendants' failure to develop their argument warrants denial of their motion on this Count.  *See, Thompson v. Boggs,* 33 F.3d 847, 854 (7th Cir. 1994) (failure to develop argument on summary judgment waives the argument); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) (explaining that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").  As to the malicious prosecution counts, the Motion brought by the Recovery Defendants is denied.

### H.  Defendant Walsh

Defendant Walsh has moved for summary judgment on all counts against him on the ground that in his capacity as watch commander he did not participate personally in any constitutional violations. "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Jenkins v. Keating,* 147 F.3d 577, 583 (7th Cir. 1998).

In *Jenkins,* the defendant officer, though not involved with the initial arrest, signed the criminal complaint against the plaintiff. *Jenkins,* 147 F.3d at 583.  The officer could not be

held liable on a false arrest claim because the arrest had already taken place once the defendant signed the complaint, so the defendant did not participate in the alleged constitutional violation. *Id.* at 583-84.

Here, in contrast, the alleged violations involve not just the arrest but subsequent police conduct as well. There is evidence that Walsh made the decision to keep Baker in custody and elected to charge Baker with aggravated assault, even once he saw the report wherein the arresting officers indicated that Ghidotti had said that he did not actually see Plaintiff holding a gun. Walsh testified that he read and approved the police report that notes that Ghidotti admitted he did not actually see a gun. He testified that, in his role as watch commander, he had the authority to decide whether Baker should be charged or released without charges.

When these facts are viewed in the light most favorable to the Plaintiff, it is apparent that Defendant Walsh knew that the arresting officers lacked probable cause and nonetheless condoned the arrest – thereby prolonging the constitutional violation. Defendant Walsh's failure to use his authority to stop the constitutional violation subjects him to potential liability under § 1983. *See, Morfin v. City of Chicago,* 349 F.3d 989, 1001 (7th Cir. 2003) (noting that "an officer has a duty to intervene to prevent a false arrest or the use of excessive force if the officer is informed of the facts that establish a constitutional violation

and has the ability to prevent it"). As to Defendant Walsh, the Motion for Summary Judgment is denied.

## I. Trespass

The Recovery Defendants move for summary judgment on the trespass claims (Counts I-IV) on the ground that Ghidotti had a privilege to enter Baker's land to repossess the car. A party is liable for trespass when he intentionally intrudes upon the land of another. *Dial v. City of O'Fallon,* 411 N.E.2d 217, 220 (Ill. 1980). But there can be no liability for trespass when a person enters land based upon privilege or consent. *Desnick v. Am. Broadcasting Cos.,* 44 F.3d 1345, 1351 (7th Cir. 1995).

One such privilege is used every day but not often given much thought: the privilege to approach a house and knock on the front door. *See*, *Florida v. Jardines,* __ U.S. __, 133 S.Ct. 1409, 1415 (2013) (recognizing that even unsolicited visitors have an implied privilege "to approach the home by the front path" and "knock promptly"). Another privilege arises in the context of repossession, and allows a person who is entitled to the immediate possession of a chattel to enter the land of another at a reasonable time and in a reasonable manner in order to remove the chattel. *Restatement (Second) of Torts* § 198 (1965). The repossessor must not breach the peace, which means that the repossessor's conduct must not invite, or be likely to invite, immediate public turbulence. 810 Ill. Comp. Stat. 5/9-609;

*Valentino v. Glendale Nissan, Inc.,* 740 N.E.2d 538, 543 (Ill. App. Ct. 2000).

Count I seeks redress for a trespass that occurred on January 11, 2010. Undisputed facts show that on that day, Ghidotti approached the Baker residence and knocked on the front door. The front door swung open, but Baker admits that the door was broken. Even though Ghidotti could see that the car was not in front of the house or in view on the property, absent some indication that visitors were not welcome, Ghidotti was entitled to go up to the front door and knock. *Jardines,* 133 S.Ct. at 1415. For this Count, it does not matter whether Ghidotti was on the premises to repossess a vehicle. There is no genuine dispute that Ghidotti's conduct on January 11 did not exceed the scope of the implied license to approach and knock on the front door, and thus was not a trespass. Summary judgment is granted for Defendants on Count I.

Count II relates to the incident on January 12 where a white man breached a closed gate in the Baker backyard and peered in through the window of the Baker back door. Ashley Baker saw the man peering in, and later identified that man as Ghidotti. A business card left at the front door that morning had the name "Recovery" on it. Even though Ghidotti does not remember going to the house that day, the record contains sufficient facts for a reasonable jury to conclude by a preponderance of the evidence that Ghidotti was the man who went into the Baker backyard that day.

For that day, Ghidotti cannot rely on any privilege to approach the house by the front path because he was in the backyard and crossed through closed gates.  Any because the Impala was nowhere to be seen, Ghidotti cannot say that he was on the property to repossess the car; at most, he was investigating its whereabouts.  This conduct amounts to a trespass, so summary judgment is denied as to Count II.

The third incident, which took place on January 27, forms the basis of Count III.  On that day, someone knocked on the front door, which caused the door to swing open.  As with Count I, the tortious conduct consists of walking up to the front door and knocking.  In the absence of some indication to the contrary – such as a closed gate, a sign saying that visitors are not welcome, or an admonition never to return – that conduct is not a trespass. There is no evidence that the Baker house was closed to visitors, or that Ghidotti was told not to return, either of which might have indicated that Ghidotti would not have had a license to go up to the front door of the house and knock.  It is true that the door swung open and triggered an alarm, which lead ultimately to police entering the house with their guns drawn.  But there is no indication that Ghidotti intended that result, or even that the police entering with guns drawn was a reasonably foreseeable consequence of a knock on the front door.  Because the conduct complained of in Count III did not exceed the scope of the implied

license to knock on a house's front door, summary judgment is granted for Defendants on Count III.

The final trespass, alleged in Count IV, took place on February 1. As an initial matter, the repossessor privilege is unavailable because with no car in sight, Ghidotti was not entering the property to repossess property. In addition, on that day, Ghidotti arrived at the Baker house and rang the doorbell in the middle of the night: either around 2:30 or 3:30 a.m. It is not customary for strangers to walk up to houses and ring the doorbell in the middle of the night with no invitation to do so. As the Supreme Court has noted, "[c]omplying with the terms of that traditional invitation," to approach a house and knock on the front door, "does not require fine-grained legal knowledge." *Jardines,* 133 S.Ct. at 1415. Whether Ghidotti had a privilege to enter the premises at that early hour on February 1 is subject to reasonable debate and is outside the scope of the briefing provided by the parties. The early hour of the events in question also precludes the Court from finding that Ghidotti was privileged as a repossessor, because his entry to the premises was not at a reasonable time. *Restatement (Second) of Torts* § 198 (1965). For these reasons, the Court denies summary judgment as to Count IV.

## J.  Intentional Infliction of Emotional Distress

The Recovery Defendants move for summary judgment as to Count XIV, for intentional infliction of emotional distress

("IIED").  In Illinois, a Plaintiff succeeds on an IIED claim by proving four elements:  (1) extreme and outrageous conduct; (2) intent or recklessness to cause emotional distress; (3) severe or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct.  *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1030 (7th Cir. 2006) (citing *Pub. Fin. Corp. v. Davis,* 360 N.E.2d 765, 767–68 (Ill. 1976)).

Defendants contend that "there is no evidence proving that the actions of the Reliable Recovery Defendants meet the extreme and outrageous conduct necessary to sustain a cause of action for intentional infliction of emotional distress."  ECF No. 114 at 19.  Defendants give the Count zero analysis of the facts of this case and not a single citation to a relevant case for more than a legal standard.  As the Court has noted already in this opinion, the Court declines to make the parties' arguments for them.  *United States v. Alden,* 527 F.3d 653, 664 (7th Cir. 2008) (noting that "it is not the obligation of this Court to research and construct the legal arguments available to parties").

Defendants' argument on the severity element fares no better.  They assert that "the intensity and duration of the claimed distress allegedly suffered by Plaintiffs were not such as would warrant the imposition of liability upon the Reliable Recovery Defendants."  ECF No. 114 at 19.  This conclusory statement,

unaccompanied by any analysis or supporting precedent, does not tell the Court *why* it should grant summary judgment – it just insists that summary judgment is warranted.

To the contrary, Plaintiffs have submitted evidence of the severe emotional distress that they suffered. The arrest and prosecution put Baker's security clearance at risk, which put his employment at risk as well. Baker's fears for his job and his safety, as well as his concerns about his daughter Ashley, led him to suffer from crying fits and lost sleep. Barbara Baker suffered from sleeplessness that caused her to fall asleep at the wheel of a company vehicle, after which she lost her job. Ashley's emotional distress was manifest in a variety of ways, including her bed wetting, failing grades, and fights and suspensions at school. Camden Baker was so upset by these events that he moved out of the house and visits rarely.

Plaintiffs' evidence of the severity of their emotional distress is sufficient to withstand Defendants' Motion for Summary Judgment. Whether their distress was severe enough to allow them to recover for IIED is an issue that must be resolved at trial. As to this Count, the Motion for Summary Judgment is denied.

### K. Qualified Immunity

The Defendant Officers have asserted an entitlement to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quotation omitted).

The Defendant Officers argue that they are entitled to qualified immunity because they did not violate any constitutional rights. As discussed above, many of the alleged constitutional violations and supported in the record and cannot be resolved without the aid of a factfinder.

The Defendant Officers argue next that any mistakes that they made were reasonable. The procedural posture of the case requires the Court to view the facts in the light most favorable to the non-moving party, which means that the Court cannot ignore sworn testimony from the Plaintiffs and others. Police do not act reasonably when they barge into a private home without a warrant, exigent circumstances, or even probable cause. Nor is it reasonable for police to arrest a suspect without investigating further when it is unclear what happened at the scene and probable cause is supported by only a report from a victim whose story does not add up. The Court cannot cherry-pick facts and excuse what may have been several serious constitutional violations. And the Supreme Court and Seventh Circuit precedent cited herein, such as *Sawyer,* 224 F.3d 675, and *West,* 487 U.S. 42, is all well-

established.  The Defendant Officers are not entitled to qualified immunity at this stage.

## L.  Defendant Unknown Officers

Plaintiffs brought this case against the named defendants and "unknown officers of the City of Chicago."  Discovery has closed, and it does not appear that Plaintiffs have attempted to name any other defendants or serve any other defendants with process.  In addition, because more than two years have passed since the incidents that form the basis of this action, any new defendants will have a statute of limitations defense.  *Dominguez v. Hendley,* 545 F.3d 585, 588 (7th Cir. 2008) (explaining that in Illinois, the statute of limitations for § 1983 claims is two years).  Therefore, the unknown officers are dismissed from this case.  *See*, *Williams v. Rodriguez,* 509 F.3d 392, 402 (7th Cir. 2007) (dismissing unnamed defendant after close of discovery).

## III.  MOTIONS TO STRIKE

Plaintiffs have filed several Motions to Strike.  Such motions are generally unnecessary, as the parties are free to use to their briefs on the substantive motion at hand to comment on the legality or adequacy of evidence and arguments presented by the other side.  The Court has taken into account the arguments put forth in the Motions to Strike, so the Motions [ECF Nos. 136, 172] are denied as moot.

## IV.  CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.    Summary judgment is granted for Plaintiff Kenneth Baker on Count VIII for false arrest;

2.    Summary judgment is granted in favor of Defendants Cabrales and Flores on all Counts, and for Defendants on Counts I and III;

3.    The "Defendant Unknown Officers" are dismissed from the case;

4.    Count IX is dismissed;

5.    Otherwise, the Motions for Summary Judgment are denied;

6.    As a result of these rulings, Plaintiffs' Motion for Summary Judgment [ECF No. 103] is granted in part and denied in part;

7.    The Motion brought by Defendants Ghidotti and Reliable Recovery [ECF No. 112] is granted in part and denied in part;

8.    The Motion brought by the Defendant Officers [ECF No. 106] is granted in part and denied in part; and

9.    The Plaintiffs' Motions to Strike [ECF Nos. 136, 172] are denied as moot.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date:3/28/2014