IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH BAKER, *et al.*,

          Plaintiffs,

     v.

TIMOTHY M. GHIDOTTI, *et al.*,

          Defendants.

Case No. 11 C 4197

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Baker (the "Plaintiff") has filed a Petition to recover attorneys' fees against Defendants the City of Chicago (the "City"), Jean M. Lindgren, Jesus Vera, Steven Martin, and Dennis P. Walsh (collectively, "Defendants") [ECF No. 231]. Plaintiff also seeks to recover costs as the prevailing party against the above-mentioned Defendants and Defendants Timothy M. Ghidotti and Reliable Recovery Services, Inc. ("Reliable") [ECF No. 223]. Defendants seek costs as the prevailing party against two other Plaintiffs, Barbara Baker and Camden Baker [ECF No. 220]. Defendants have also moved to strike Plaintiff's attorneys' fees petition [ECF No. 236].

For the reasons stated herein, Plaintiff's Petition for Fees is granted in part and denied in part; Plaintiff's Application for Costs is denied; Defendants' Application for

Costs is granted in part and denied in part; and Defendants'
Motion to Strike the Fee Petition is denied.

## I.  BACKGROUND

In the underlying litigation, attorneys Irene K. Dymkar
("Dymkar"), Torreya L. Hamilton ("Hamilton"), and Kevin T.
Turkcan ("Turkcan") (collectively, "Counsel") represented
Plaintiffs Kenneth, Barbara, Camden, and Ashley Baker.  The
factual basis for Plaintiffs' claims is detailed in the Court's
March 28, 2014 Order granting in part and denying in part the
parties' Cross-Motions for Summary Judgment [ECF No. 178].  In
that Order, the Court granted Plaintiffs' Motion for Summary
Judgment on one claim only — Kenneth Baker's claim for false
arrest against Defendants Martin, Lindgren, and Vera.

Plaintiffs' remaining claims for trespass, illegal entry,
illegal search, illegal detention, conspiracy, and malicious
prosecution went to trial, along with the issue of damages on
the false arrest claim for which the Court had already
determined liability.  On October 24, 2014, the jury returned a
verdict in favor of Kenneth Baker on his malicious prosecution
claim, awarding him $5,000.00 in damages.  The jury also awarded
Kenneth Baker $25,000.00 in damages on his false arrest claim.
For all remaining claims, the jury found in favor of Defendants.

On January 21, 2015, Plaintiff petitioned for attorneys'
fees pursuant to 42 U.S.C. § 1988.

## II. ANALYSIS

### A. Attorneys' Fees

The Civil Rights Attorney's Fees Award Act, 42. U.S.C. § 1988, allows the award of "a reasonable attorney's fee to the prevailing party in various kinds of civil rights cases, including suits brought under § 1983." *Fox v. Vice,* 131 S.Ct. 2205, 2213 (2011) (internal quotations omitted). The statute serves the dual purpose of reimbursing plaintiffs for vindicating important civil rights and holding accountable violators of federal law. *See, id.* However, a defendant "need only compensate plaintiff for fees to the extent plaintiff succeeds; losing claims are not compensable." *Kurowski v. Krajewski,* 848 F.2d 767, 776-77 (7th Cir. 1988).

In awarding fees under § 1988, a court's first step is to determine whether the party seeking fees is entitled to "prevailing party" status. *Gibson v. City of Chicago,* 873 F.Supp.2d 975, 982 (N.D. Ill. 2012). Because Defendants do not dispute that Plaintiff prevailed on his § 1983 claim for false arrest, the Court moves immediately to the second step – determining whether the claimed fees are reasonable under the circumstances. *Id.*

To calculate reasonable attorneys' fees under § 1988, courts apply the "lodestar method," which multiplies the attorneys' reasonable hourly rates by the number of hours they

reasonably expended. *People Who Care v. Rockford Bd. of Educ.,
Sch. Dist. No. 205,* 90 F.3d 1307, 1310 (7th Cir. 1996) (citing
*Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). The party
requesting fees carries the burden of establishing their
reasonableness. *McNabola v. Chi. Transit Auth.,* 10 F.3d 501,
518 (7th Cir. 1993). Once the Court has arrived at a base
lodestar figure, it may adjust the award in light of the factors
identified in *Hensley* that are not already subsumed into the
initial lodestar calculation. *See, People Who Care,* 90 F.3d at
1310 (citing *Hensley,* 461 U.S. at 434 n.9). These factors
include "the complexity of the legal issues involved, the degree
of success obtained, and the public interest advanced by the
litigation." *Schlacher v. Law Offices of Phillip J. Rotche &
Assocs., P.C.,* 574 F.3d 852, 856–57 (7th Cir. 2009).

Defendants have moved to strike Plaintiff's Petition in its
entirety because of Plaintiff's failure to comply with Local
Rule 54.3, which requires the parties to confer and attempt in
good faith to reach an agreement on the amount of fees and costs
to be awarded prior to filing a fee petition. Rule 54.3 serves
two important functions: (1) providing the parties with the
time and information necessary to resolve fee disputes without
court intervention, and (2) helping them ensure that any
disputes are crystalized in the event a fee petition is filed.
*Jones v. Ameriquest Mortgage Co.,* No. 05 C 0432, 2008 WL

4686152, at *3 (N.D. Ill. May 19, 2008). Plaintiff's failure to comply with Local Rule 54.3 has resulted in a missed opportunity to resolve the issue of fees without unnecessarily burdening the Court. Although this failure has resulted in inconvenience, and shows disregard for court rules, the parties, by now, have had full opportunity to exchange and review the information that Rule 54.3 requires. For this reason, Court denies Defendants' Motion to Strike Plaintiff's fee petition.

### 1. Lodestar Calculation

Plaintiff seeks a total of $450,268.00 in attorneys' fees, calculated as follows:

| Attorney | Hourly Rate | Hours | Total per Attorney |
|---|---|---|---|
| Irene K. Dymkar | $495 | 699.9 | $346,450.50 |
| Torreya L. Hamilton | $450 | 156.2 | $70,290.00 |
| Kevin Turkcan | $230 | 30.5 | $7,015.00 |
| Paralegals | $125 | 212.1 | $26,512.50 |
| | | **TOTAL** | **$450,268.00** |

Dymkar has excluded from her records 84.2 additional hours that were dedicated to the unsuccessful conspiracy claims against Defendant Ghidotti.

### a. Hourly Rates

The Court begins by examining Counsel's claimed hourly rates. In determining a reasonable hourly rate, attorneys' fees awarded under Section 1988 "are to be based on market rates for services rendered." *Missouri v. Jenkins by Agyei,* 491 U.S. 274,

283 (1989).  "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *People Who Care,* 90 F.3d at 1310 (quoting *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir. 1993)).  The next best evidence of a reasonable fee is the rate charged by lawyers in the community of comparable skill, experience, and reputation. *Id.*  Previous fee awards are also "useful for establishing a reasonable market rate."  *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs,* 553 F.3d 487, 491 (7th Cir. 2009).

In support of their claimed hourly rates, each attorney has submitted a declaration detailing his or her experience litigating civil rights cases, as well as affidavits from other civil rights attorneys supporting the proposed rates.  Dymkar and Hamilton have been practicing for 38 and 20 years respectively.  Both are seasoned attorneys with substantial experience litigating civil rights cases.  Turkcan is only in his second year of practice, but has already represented a number of plaintiffs in civil rights cases.  Plaintiff argues that the hourly billing rates he proposes are consistent with the rates awarded to attorneys in other civil rights cases within this district, the rates the City of Chicago has agreed to in other cases, and the Laffey Matrix.  The Laffey Matrix is "a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States

Attorney's Office for the District of Columbia to be used in fee-shifting cases." *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 649 (7th Cir. 2011).

The Court's first task is to determine the prevailing market rate for the legal services provided. The party seeking fees bears the burden of showing that the hourly rates sought are in line with the prevailing rate in the community. *Id.* at 640. If the applicant satisfies this burden, the burden then shifts to the opposing party to demonstrate why a lower rate should be awarded. *Id.* If a fee applicant fails to meet its initial burden, the Court has the authority to determine a reasonable rate on its own. *Id.*

The Court notes at the outset that the personal declarations Counsel have submitted are of limited value in determining the market rate. *See, Spegon v. Catholic Bishop of Chi.,* 175 F.3d 544, 556 (7th Cir. 1999). Instead, the Court must focus on the other evidence Counsel have provided, such as affidavits from similarly experienced attorneys and evidence of the fee awards that each attorney has received in similar cases. *Id.*

Dymkar seeks a rate of $495 per hour. In support of her rate, she notes that in 2012, Judge Elaine E. Bucklo awarded her a rate of $425 per hour in another civil rights case, *Nelson v. Salgado,* 9 C 5357. Dymkar also states that Judge Susan E. Cox

recently "suggested" $460 per hour as a compromise in the case of *Edwards v. Joliff-Blake,* 13 C 4558, but it is not clear that that rate was ever agreed to or awarded.

Dymkar has also submitted affidavits from three other civil rights attorneys, Jon Loevy ("Loevy"), Jeffrey J. Neslund ("Neslund"), and Janine H. Hoft ("Hoft"). Loevy and Neslund, who have each been practicing for approximately 20 years, claim rates ranging from $425 to $505 per hour. Loevy cites three civil rights cases in which attorneys were awarded even higher rates of up to $535 per hour. Hoft notes that partners in her firm were recently awarded rates ranging from $325 per hour for a 1997 law graduate to $525 per hour for a 1972 law graduate.

As further support for the hourly rates sought, Dymkar points to the Laffey Matrix. Under the Laffey Matrix, the appropriate rate for an attorney of Dymkar's experiences is $520 per hour. The Seventh Circuit has never formally adopted the Laffey Matrix, however, and the rates charged within the matrix are "significantly higher than those charged in this district." *Gibson v. City of Chicago,* 873 F.Supp.2d 975, 984 (N.D. Ill. 2012). For this reason, the Court finds that the Laffey Matrix is not, on its own, persuasive evidence of the actual market rate for Dymkar's services.

The affidavits Dymkar has submitted speak more to the attesting attorneys' experience than they do to Dymkar's. As

many courts have noted, Loevy is "an attorney whose experience, skill, and record of success in representing plaintiffs in police misconduct cases place him at the apex of attorneys who practice in that field." *Wells v. City of Chicago,* 925 F.Supp.2d 1036, 1041 (N.D. Ill. 2013). Dymkar has not presented sufficient evidence to show that her rates are on par with Loevy's, even though she has practiced longer. As Judge Virginia M. Kendall noted in 2012, when she adopted Magistrate Judge Sidney I. Shenkier's recommendation of an hourly rate of $330 for Dymkar, "Ms. Dymkar's record, while extended in time, lacks the experience and jury verdicts in police misconduct cases to warrant such an excessive hourly rate." *Ragland v. Ortiz,* No. 08 C 6157, 2012 WL 4060310, at *3 (N.D. Ill. Sept. 14, 2012). Indeed, Dymkar only began to focus exclusively on civil rights cases in 2006. (Dymkar Aff., Ex. E to Pl.'s Mem., ECF No. 231-5, ¶ 12.) Based on the hourly rates Dymkar has been awarded in the past, which range from $330–$425 per hour, and the affidavits she has submitted, which suggest fees ranging from $425–$535 per hour, the Court finds $425 per hour to be a reasonable rate placed firmly within the middle of the spectrum. Given that Dymkar was awarded rates as low as $330 in 2012, the Court finds that this award adequately reflects the increased experience Dymkar has gained since then.

Hamilton seeks a rate of $450 per hour. In support of her rate, she notes that she has consistently been awarded rates of $395–$425 within this district from 2010 to 2014. Hamilton has also submitted affidavits from three civil rights attorneys, Christopher R. Smith ("Smith"), Neslund, and Lawrence Jackowiak ("Jackowiak"), who have been awarded fees ranging from $395–$450 per hour. Although Smith, Neslund, and Jackowiak have worked closely with Hamilton in the past, and comment briefly on her skill as an attorney, the Court finds most persuasive Hamilton's previously awarded hourly rates of $395 to $425. Based on this evidence, the Court finds that the requested fee award of $450 per hour — a $25–$55 increase over previous rates — reasonable.

Turkcan seeks a rate of $230 per hour. Half of Turkcan's experience predates his admission to the bar. During law school, Turkcan worked as a law clerk for Hamilton and also represented clients under a 711 license. Turkcan states that, to date, he has represented plaintiffs in 43 civil rights cases. Turkcan has submitted two affidavits from more experienced civil rights attorneys attesting to his qualifications. The Court finds these affidavits to be of limited value, however. Although both attorneys are familiar with Turkcan's work, their affidavits largely chronicle their own experience and prior billing rates. One attorney, Jared Kosoglad ("Kosoglad"), urges this Court to adopt the Meckler Report's recommendation of $230

per hour as the average rate for attorneys with two to three years experience. As Judge Charles P. Norgle has noted, "that report was prepared for and submitted in conjunction with a complex civil rights class action lawsuit challenging the use of unjustified and sexually-intrusive search procedures on men and women at the Cook County Jail" and is specific to that case. *Cavada v. City of Chicago,* No. 13 CV 1916, 2014 WL 4124273, at *3 (N.D. Ill. Aug. 18, 2014). Reliance on the Meckler Report is not appropriate here.

Turkcan was admitted to the bar in 2013 and has been practicing for less than two years. Courts within this district have found a rate of $200 to be in the middle of the range for similarly experienced attorneys in civil rights cases. *See, Wells,* 925 F.Supp.2d at 1042. Accordingly, the Court reduces Turkcan's requested hourly rate to $200 per hour.

Defendants do not object to the claimed paralegal and law clerk rates of $125 per hour, which the Court finds to be reasonable.

### b. Hours Billed

The Court next turns its attention to the number of hours billed, which cannot be "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434. Defendants object to the hours Counsel — specifically Dymkar — have billed on four grounds.

First, Defendants argue that the hours billed still include 128.5 hours of attorney time attributed exclusively to Ghidotti, an employee of Reliable, that were entered prior to the date of the Court's summary judgment ruling. Counsel has already agreed not to bill litigation hours attributable to Ghidotti, and for this reason, Dymkar has already reduced her initial calculation by 84.2 hours. Dymkar argues that she has excluded time "when it was clear that only the Reliable Recover [*sic*] defendants were involved." (Pl.'s Reply, ECF No. 245, at 8.) Defendants, however, have combed through Plaintiff's billing records and singled out individual entries that pertain only to Reliable. Many are clearly labeled "RRS." The Court agrees that these entries should have been eliminated along with the other 84.2 hours. The Court finds that a reduction of Dymkar's hours by 128.5 to be appropriate.

Second, Defendants argue that certain lower level tasks included in the billing must be compensated at paralegal rates. Plaintiff counters that even when a paralegal performs work, an attorney must still spend time reviewing it. As the Seventh Circuit has made clear, "the court cannot award fees at attorneys' rates for work that does not require that level of skill." *O'Brien v. Panino's, Inc.,* No. 10 C 2991, 2011 WL 3610076, at *2 (N.D. Ill. Aug. 16, 2011) (citing *Spegon,* 175 F.3d at 553. Such tasks are "absorbed as overhead into the

attorneys' billing rate." *Id.* Accordingly, the Court finds that it is appropriate to reduce Dymkar's hours by 9.9 for tasks such as setting up a file, reviewing social media, and preparing exhibits, based on her contention that she was reviewing paralegal work.

Third, Defendants argue that some entries should be removed because they are unnecessary to the litigation or too vague to evaluate. Defendants cite multiple instances of "unnecessary" billing, such as "1.4 hours for a motion hearing when nothing appears on the docket." (Defs.' Opp., ECF No. 244, at 9.) Defendants have also indicated multiple entries it deems to be vague, such as "review order," "review deposition transcripts," and "review file." (*See,* Ex. B. to Defs.' Resp, ECF No 244-2.) Finally, Defendants argue that argue that Plaintiff billed excessively for reviewing emails and minute orders, billing at least .1 hours each time an email was sent or received, and each time a minute order was read.

"[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights,* 223 F.3d 593, 605 (7th Cir. 2000). Based on these last two

objections, the Court reduces Dymkar's time by an additional 30 hours (approximately 4% of the original 699.9 hours billed).

Based on the corrected hourly rates and hours billed, Plaintiff's lodestar is recalculated as $328,790.00.

| Attorney | Hourly Rate | Hours | Total per Attorney |
|----------|-------------|-------|--------------------|
| Irene K. Dymkar | $425 | 531.5 | $225,887.50 |
| Torreya L. Hamilton | $450 | 156.2 | $70,290.00 |
| Kevin Turkcan | $200 | 30.5 | $6,100.00 |
| Paralegals | $125 | 212.1 | $26,512.50 |
| | | **TOTAL** | **$328,790.00** |

### 2. Lodestar Adjustment

Having determined Plaintiff's initial lodestar, the Court must now determine whether an adjustment is appropriate based on the *Hensley* factors, including the results obtained, the complexity of the case, and the public interest. *See, Schlacher,* 574 F.3d at 856–57. The most important factor is the "results obtained," which becomes particularly significant in cases where a prevailing party succeeds on only some claims for relief. *Jaffee v. Redmond,* 142 F.3d 409, 413 (7th Cir. 1998). A plaintiff is not entitled to fees for time expended in pursuit of unsuccessful, unrelated claims. *Id.* (citing *Hensley,* 461 U.S. at 434–35). However, "when claims are interrelated, as is often the case in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed

to the success of other claims." *Id.* (citing *Hensley,* 461 U.S. at 435).

Because Plaintiff did not actually prevail on any of his federal claims at trial, "Defendants propose excluding all of Irene Dymkar's attorney fees after October 4, 2013 and reducing her fees up to that point by 50%." (Defs.' Opp., ECF No. 244, at 13.) It is unclear why Defendants have chosen October 4, 2013 as the cutoff date, as Plaintiffs did not file their Reply in support of summary judgment until November 22, 2013 [ECF No. 153], and the Court did not enter its summary judgment ruling until March 28, 2014 [ECF No. 178]. Defendants further state that Hamilton's time should be reduced by 90% because she did not join this case until after the Court granted summary judgment and, if anything, only helped secure Plaintiff's damages at trial. Turckan likewise did not join the trial until after the Court's ruling on summary judgment. Defendants argue that his time should be stricken in its entirety because Defendants fail to see "what value, if any, Mr. Turckan added to this case." (Defs.' Opp., ECF No. 244, at 7.)

Plaintiff argues that he was forced to trial because of the City's refusal to settle the case. Plaintiff notes that although the Court initially awarded him summary judgment on his false arrest claim (*see,* ECF No. 178, at 10-14), the City refused to engage in settlement talks, pushing resolution of

damages to trial. According to Plaintiff, "[t]he City seemed to be oblivious to the fact that if the jury awarded plaintiff damages on the claim for which liability . . . was established at summary judgment, plaintiff would be a prevailing party, entitled to attorneys' fees." (Pls.' Mem., ECF No. 231, at 5.) The City contends it did engage in settlement negotiations, and that its October 6, 2014 settlement offer of $100,000.00 is actually a reason to reduce Plaintiff's lodestar because it was a substantial offer that greatly exceeded the amount ultimately recovered at trial.

Here, reduction of the lodestar is appropriate in light of Plaintiff's limited success. "A plaintiff who achieves excellent results should receive the entire lodestar, but where a plaintiff has achieved only partial or limited success, the lodestar may be an excessive amount." *Montanez v. Simon,* 755 F.3d 547, 556 (7th Cir. 2014) (citations and internal quotations omitted), *cert. denied sub nom., Montanez v. Chi. Police Officers FICO,* 135 S.Ct. 459 (2014). Plaintiff did not receive an "excellent result" when he lost four of the six claims that went to trial and took home a judgment of $30,000.00.

Moreover, it is not clear that these claims were the central or most important claims at issue in the lawsuit. Counsel did not prevail on any of the core claims shared among all four Plaintiffs: illegal entry, illegal search, conspiracy,

and trespass.   Rather, Counsel only succeeded on two claims
specific to Kenneth Baker, which seek unique relief for false
arrest and subsequent police misconduct.

In addition, the Court notes that this case did not present
any particularly complex legal issues, nor is it likely to
result in any broad social impact that will affect persons other
than Kenneth Baker.   These factors also support a downward
adjustment of the lodestar. *See, Schlacher,* 574 F.3d at 856–57.

Although the Seventh Circuit has cautioned against the use
of the so-called "meat-axe" approach in reducing the lodestar,
it has also noted that there is no precise formula for reducing
a lodestar to reflect partial or limited success. *Montanez,* 755
F.3d at 556.   In such cases, "there is nothing to do but make an
across-the-board reduction that seems appropriate in light of
the ratio between winning and losing claims." *Richardson v.
City of Chicago,* 740 F.3d 1099, 1103 (7th Cir. 2014).   Taking
into account the fact that Dymkar's hours have already been
reduced as to the conspiracy and trespass claims against
Ghidotti and Reliable, the Court concludes that Plaintiff's
limited success justifies a 50% reduction of Plaintiff's
$328,790.00 lodestar.   Because Defendants have failed to
establish why Dymkar's fees should be cut by 50% prior to
October 4, 2013, and cut entirely after that point — and why

Turkcan's fees should be eliminated altogether — the Court finds a 50% overall reduction more appropriate.

Plaintiff's Petition for Fees is granted in part and denied in part in the amount of $164,395.00.

### 3. Prejudgment Interest

Plaintiff seeks prejudgment interest on any fee award, assessed from November 3, 2014, at the prevailing prime rate of 3.25%. Defendants argue the prejudgment interest is not appropriate here because Plaintiff failed to comply with Local Rule 54.3, which requires the parties to confer and attempt in good faith to reach an agreement on the amount of fees and costs to be awarded prior to the filing of a fee petition. Plaintiff made no effort to confer with Defendant before filing his fee petition on January 21, 2015, one day short of the 90-day deadline imposed under Local Rule 54.3(b).

Although prejudgment interest is "presumptively available to the victims of federal law violations," whether it is ultimately awarded rests within the sound discretion of the district court. *United States v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.,* 983 F.2d 790, 799 (7th Cir. 1993). "[P]rejudgment interest typically accrues from the date of the loss or from the date on which the claim accrued." *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.,* 325 F.3d 924, 935 (7th Cir. 2003).

However, courts within this district have routinely held that it is reasonable for the party opposing a fee petition to have time to review it without being charged interest. *Blackwell v. Kalinowski,* No. 08 C 7257, 2012 WL 469962, at *12 (N.D. Ill. Feb. 13, 2012). Consistent with these rulings, courts often do not assess interest until 30 days after a fee petition has been filed. *See, id.*

Here, because Plaintiff filed his fee petition on January 21, 2015, interest will begin to accrue from February 21, 2015.

## B. Costs

Federal Rule of Civil Procedure Rule 54(d)(1) provides that a prevailing party may obtain reimbursement for certain litigation costs at the conclusion of a lawsuit. The rule establishes a "presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854, 864 (7th Cir. 2005).

Here, both parties seek to recover costs as a prevailing party on separate claims against separate parties. Plaintiff seeks $7,574.43 in costs as a prevailing party against Defendants Lindgren, Vera, Martin, Walsh, the City, Ghidotti, and Reliable on the false arrest and malicious prosecution

claims, while Defendants seek $6,714.60 in costs as the prevailing party against Plaintiffs Barbara and Camden Baker. Under Rule 54(d), the "prevailing party" is the party who prevails on a substantial part of the litigation. *Testa v. Vill. of Mundelein, Ill.,* 89 F.3d 443, 447 (7th Cir. 1996). However, a party may receive substantial relief even if it doesn't prevail on every claim. *Slane v. Mariah Boats, Inc.,* 164 F.3d 1065, 1068 (7th Cir. 1999).

District courts have broad discretion in awarding reasonable costs, particularly in cases that result in a "mixed outcome." *Gavoni v. Dobbs House, Inc.,* 164 F.3d 1071, 1075 (7th Cir. 1999). Where a verdict is split fairly evenly, a court may decline to award costs to either party. *See, e.g., Testa,* 89 F.3d at 447 (requiring each party to bear its own costs where plaintiff had prevailed on one of two claims).

Here, the jury was asked to return a verdict on 22 claims distributed among four Plaintiffs. Kenneth Baker prevailed on two of the six claims he asserted, recovering a judgment of $30,000.00 — an award that is more than nominal, "but certainly not substantial." *Gonzalez v. City of Elgin,* No. 06 C 5321, 2010 WL 4636638, at *2 (N.D. Ill. Nov. 8, 2010). Defendants, on the other hand, prevailed on all remaining claims. Although this is a "mixed outcome" case, the verdict indicates that Defendants — not Plaintiff — prevailed on a "substantial part"

of the litigation. The Court therefore denies Plaintiff's application for costs.

Turning to Defendants' application for costs, the Court must assess whether the fees sought are both (1) recoverable, and (2) reasonable. *Majeske v. City of Chicago,* 218 F.3d 816, 824 (7th Cir. 2000). Costs recoverable under Rule 54(d) are set out in 28 U.S.C. § 1920. Here, Defendants seek to recover the following amounts: (1) $169.00 for fees incurred in serving two subpoenas, (2) $5,444.64 in transcript fees, (3) $615.00 in copying fees, and (4) $485.00 in "other costs" incurred in obtaining Plaintiffs' employment and education records. The Court addresses each category in turn.

First, Defendants seek $169.00 in subpoena fees. Under § 1920, courts may award costs for "[f]ees of the clerk and marshal." 28 U.S.C. § 1920(1). This provision enables a prevailing party to recover costs for using a private process server, "as long as those costs do not exceed the fees charged by a marshal." *Dishman v. Cleary,* 279 F.R.D. 460, 466 (N.D. Ill. 2012). The allowable fee charged by a marshal is $65.00 per hour plus travel costs and out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3). The invoice Defendants have provided do not break down the $209.00 in "services rendered," so the Court cannot determine whether the subpoena fees exceed the standard hourly rate of $65.00. The Court will therefore limit the

subpoena fees sought to $65.00 per witness, for a total of $130.00.

Second, Defendants seek $5,444.64 in transcript fees. The costs of transcripts "necessarily obtained for use in the case" are recoverable pursuant to § 1920 as long as they do not exceed the regular per-page rate of $3.65 per page established by the Judicial Conference of the United States. *See,* 28 U.S.C. § 1920(2); L.R. 54.1(b). Only one of the transcripts Defendants seek rises above this rate — a 233-page trial transcript, requested while the trial was pending, and produced at a rate of $4.25 per page. Defendants do not explain why this transcript was "obtained for use in the case," although presumably it was used to support their Motion for Judgment as a Matter of Law (*see,* ECF No. 221). The Court reduces the per-page cost of this transcript to $3.65, lowering Defendants' transcript fees by $139.80, from $5,444.64 to $5,306.84.

Third, Defendants seek $615.00 in copying fees. Section 1920 expressly authorizes "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Extra copies of filed papers, produced for attorney convenience, are not recoverable. *Young v. City of Chicago,* No. 00 C 4478, 2002 WL 31118328, at *2 (N.D. Ill. Sept. 24, 2002). Defendants — not the district court — bear the burden of

showing that the copies for which they seek reimbursement were "necessarily obtained for use in the case." *See, Rice v. Sunrise Express, Inc.,* 237 F.Supp.2d 962, 980 (N.D. Ind. 2002). Defendants have not made this showing here. Their tally of photocopying charges reads much like the docket in this case, and it is unclear when Defendants were photocopying papers for their own convenience and when they were doing so out of necessity. Accordingly, the Court reduces Defendants' photocopying costs by 20%, from $615.00 to $492.00.

Finally, Defendants seek $485.96 in "other costs," namely, the costs incurred in obtaining the employment records of Kenneth and Barbara Baker, and the education records of Ashley Baker. These records were relevant to defending against Plaintiffs' intentional infliction of emotional distress claims, although those claims did not ultimately proceed to trial. The costs of subpoenaing records is recoverable under § 1920. *See, e.g., Falcon v. City of Chicago,* No. 98 C 4028, 2000 WL 1231403, at *2 (N.D. Ill. Aug. 28, 2000) (allowing defendant to recover subpoena fees incurred in obtaining plaintiff's medical and employment records). The Court therefore awards Defendants their request for the fees related to the employment and education records in full.

Defendants' Application for Costs is granted in part and denied in part in the total amount of $6,414.80.

### III. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.    Plaintiff's Petition for Fees [ECF No. 231] is granted in part and denied in part, in the total amount of $164,395.00, plus interest assessed at a rate of 3.25% from February 21, 2015;

2.    Plaintiff's Application for Costs [ECF No. 223] is denied;

3.    Defendants' Application for Costs [ECF No. 220] is granted in part and denied in part, in the total amount of $6,414.80; and

4.    Defendants' Motion to Strike Plaintiff's Fee Petition [ECF No. 236] is denied.

**IT IS SO ORDERED.**

_____
        Harry D. Leinenweber, Judge
        United States District Court

Dated:4/24/2015